[Civ. No. 202. Fifth Dist. Jan. 3, 1963.]

WACO-PORTER CORPORATION, Petitioner, v. THE SUPERIOR COURT OF TUOLUMNE COUNTY, Respondent; M. DALE KEYSER, JR., Real Party in Interest.

Neumiller, Beardslee, Diehl & Siegert and Darrell Glahn for Petitioner.

No appearance for Respondent.

Victor Goehring for Real Party in Interest.

STONE, J.—Petitioner Waco-Porter Corporation, an Illinois corporation, seeks a writ of mandate to compel the Superior Court of Tuolumne County to enter its order quashing service of summons in an action brought by plaintiff M. Dale Keyser, Jr., the real party in interest. (See Code Civ. Proc., § 416.3.) The action was brought against Waco-Porter to recover damages for personal injuries suffered by plaintiff in an accident resulting from the use of gymnasium equipment at Sonora High School in Tuolumne County, California. Plaintiff contends that Waco-Porter manufactured the gymnasium equipment, that the equipment was defective; that plaintiff was injured by reason of said defect. Plaintiff joined as defendant Opco Industries, Inc., a corporation alleged to be the exclusive distributor and sales representative in northern California for school equipment manufactured by Waco-Porter.

Waco-Porter was served by making service on the Secretary of State of the State of California. (See Corp. Code, § 6501.) Waco-Porter appeared specially under the provisions of Code of Civil Procedure section 416.1, and moved the superior court for an order quashing service on the ground that Waco-Porter was not doing business in this state. The motion was denied.

Code of Civil Procedure section 411, subdivision 2, provides for service of summons on a foreign corporation doing business in this state in the manner provided by sections 6500 to 6504 of Corporations Code. █ Plaintiff made service accordingly, and the basic question is whether Waco-Porter was "doing business in this State" within the sense of Code of Civil Procedure section 411, which, in turn, must be equated with the due process clause of the United States Constitution. (*Cosper* v. *Smith & Wesson Arms Co.*, 53 Cal.2d 77, 82 [346 P.2d 409].)

The principles which govern the determination are found in *International Shoe Co.* v. *State of Washington,* 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057] a case which broadened the scope of the landmark case on the subject, *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565]. In the *International Shoe* case Mr. Chief Justice Stone held that "doing business" insofar as that term relates to jurisdiction, requires "certain minimum contacts" with the state of the forum in order that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Manifestly this terminology encompasses a field so broad as to preclude an exact definition. Consequently the term "doing business" is a product of judicial construction and its limits have been largely determined by the process of inclusion and exclusion according to the facts peculiar to each case.

Thus we turn to the facts of the case at bar. Petitioner Waco-Porter filed an affidavit which, in substance, denies that it had any contact in the State of California, and affirmatively alleges an outright sale consummated in the State of Illinois between Waco-Porter, as seller, and Opco Industries, as purchaser. It is further stated that the gymnasium equipment was shipped from Illinois to defendant Opco in California at the request of Opco and pursuant to a sale consummated in the State of Illinois. A countervailing affidavit by one Charles James, president of codefendant Opco Industries, Inc., a corporation, reads as follows:

"I, CHARLES JAMES, under penalty of perjury declare as follows:

"That for approximately two (2) years last past and at the time of the sale of the gymnasium equipment to Sonora High School, in August of 1960, Opco Industries, Inc., a corporation, of which I am President, was the exclusive distributor and sales representative for northern California of school equipment manufactured by Waco-Porter Corporation, a corporation, including the gymnasium equipment involved in the above entitled action; that Opco Industries purchased such equipment Waco-Porter Corporation and then sold the same in the regular course of retail trade in northern California; that Opco Industries, Inc., also does business under the name of Outdoor Products Company; that Porter Athletic Equipment Company is a division of Waco-Porter Corporation and manufactured the horizontal bar described in said Complaint; that after the accident described in said Complaint the President of Waco-Porter Corporation, Mr. H. P. Albrecht, came to Cali-

fornia and investigated said accident and conferred with affiant about the same.''

Whether or not ''certain minimum contacts'' were established in the case before us must be determined from the foregoing affidavit of James, as that is the only affidavit upon which defendant Opco and the plaintiff, real party in interest, relied in the trial court.

On its face the James affidavit discloses a ''minimum contact'' between Waco-Porter and its distributor in California that would bring the case within the rationale of *International Shoe Co.* v. *State of Washington, supra,* and *Cosper* v. *Smith & Wesson Arms Co., supra.* A review of the cases construing the term ''minimum contact'' reveals that the United States Supreme Court has gone even further in recognizing contacts in modern business intercourse between residents of the various states than did the California Supreme Court in *Cosper* v. *Smith & Wesson.* We have reference particularly to the holding in *McGee* v. *International Life Insurance Co.,* 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223]. In that case an insured domiciled in California purchased a life insurance policy from a company incorporated in Arizona, a company that solicited its business in California by mail, having no office, agent, or sales personnel in the state. A Texas corporation assumed the insurance obligations of the Arizona corporation and mailed from Texas an offer to insure plaintiff in accordance with the terms of the original policy. The insured accepted the offer by mail in California, and he mailed the premiums to the Texas office of defendant. The Texas defendant had not solicited business through agents in California and insofar as the opinion discloses, issuing this one policy was the only business the Texas defendant transacted in California. Mr. Justice Black held there had been sufficient ''minimum contact'' to satisfy due process in that the insurance policy had a substantial connection with the State of California, the state in which the insured lived and in which action was brought.

Petitioner argues that the scope of the *McGee* opinion has been circumscribed by *Hanson* v. *Denckla,* 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283]. As we read the facts of the *Hanson* case we find them distinguishable from *McGee,* and the facts of the case at bar are even more readily distinguishable from *Hanson.* In *Hanson* a Florida Probate Court attempted to exercise personal jurisdiction over a Delaware corporate trustee by means of constructive service. The trust

had been created in Delaware, of a corpus physically located therein, by a resident of that state who had later become domiciled in Florida. Although the Florida Court had jurisdiction over the probate and construction of the will, the case was decided on the question of *in rem jurisdiction* over the assets in Delaware. Mr. Chief Justice Warren, commenting upon the necessary minimum activities within the forum state upon which the "minimum contact" rule is predicated, said, at page 253:

"The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co.* v. *State of Washington*, 326 U.S. 310, 319 [66 S.Ct. 154, 159, 90 L.Ed. 95]."

■ While in *Hanson* the Supreme Court found that the trustee had not purposefully availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," the case before us reveals Waco-Porter did purposefully avail itself of the privilege of selling its products to a California distributor for resale to the citizens of the forum state. By doing so it invoked the benefits and protection of California laws and, consequently, it must accept the responsibilities, obligations and duties imposed by the law of the forum state. These include obligations to the purchasers of its products. Thus the limitations that petitioner finds in *Hanson* v. *Denckla, supra,* are not applicable to the case at bar.

However, more than mere minimal contacts must be considered in determining whether a state may properly assume jurisdiction of a foreign corporation. ■ Cases discussing the various circumstances which courts must consider in determining this jurisdictional question are summarized by Mr. Justice Traynor, in *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1], at page 225, as follows:

"Although a foreign corporation may have sufficient contacts with a state to justify an assumption of jurisdiction over it to enforce causes of action having no relation to its activities in that state [citations], more contacts are required for the assumption of such extensive jurisdiction than sales and sales promotion within the state by independent nonexclusive sales

representatives. [Citations.] To hold otherwise would subject any corporation that promotes the sales of its goods on a nationwide basis to suit anywhere in the United States without regard to other considerations bearing on 'the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' [Citations.] Accordingly, we must look beyond defendant's sales activities in this state to determine whether jurisdiction may constitutionally be assumed.

''The interest of the state in providing a forum for its residents [citation] or in regulating the business involved [citation]; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry.''

The court found in *Fisher Governor Co.* that an insufficient number of the necessary circumstances existed primarily because the accident which was the basis for the lawsuit occurred in a state other than that of the forum. In the case at bar, the accident occurred in Tuolumne County, where the action is pending. When Waco-Porter for its own ''advantage'' availed itself of the privilege of selling its product to a California distributor for resale, it knew, or could reasonably be expected to know, that the equipment would be used by persons in California; that if there were a defect in the equipment it might result in an accident to a person using the equipment in California; that if an accident occurred the witnesses to the facts surrounding the accident would be at the situs of the accident; that the equipment involved would also be there. Furthermore, any intervening factor which might provide a defense would be most likely to occur in California.

Certainly it is not unreasonable to require petitioner to do that which it reasonably should have expected to do, namely, defend an action of this nature at the place where (a) the equipment was used, (b) the defect became known, and (c) the damage was caused. Indeed, our principle concern in this case is with petitioner's suggestion that the entire affidavit of Charles James should be disregarded upon the ground it states conclusions of law rather than facts. In particular, it is contended that ''exclusive distributor and

sales representative for northern California," the crucial allegations of the affidavit, are conclusions and must be disregarded. We are confronted with the same difficulty that arose in the first part of this opinion in construing the term "doing business." That is to say, the nature and scope of either term does not admit to a narrow, inflexible definition, nor fall into a single invariable category. ■ Whether a particular allegation constitutes an evidentiary fact, an ultimate fact, or a conclusion of law, is sometimes difficult to determine. It is possible for a given allegation to be any one of the three, depending upon the manner in which it is used.

■ The basic test of whether an allegation is a statement of fact or a conclusion lies in the answer to the question: Does it usurp the province of the court to draw from it all legal inferences or conclusions which are determinative of the issue? (*Green* v. *Palmer*, 15 Cal. 411, 414 [76 Am.Dec. 492]; *Ricketson* v. *Richardson*, 26 Cal. 149, 153.) As a general rule, if it does, it is a conclusion; if it does not, it is a statement of fact. In this case the determination which the court was required to make was whether petitioner was "doing business."

■ The statements in the affidavit, (a) that Opco Industries was the exclusive distributor and sales representative for northern California of school equipment manufactured by Waco-Porter, including the gymnasium equipment involved in the action; (b) that Opco Industries purchased such equipment from Waco-Porter and then sold the same in the regular course of retail trade in northern California; (c) that the president of Waco-Porter came to California and investigated the accident and conferred about it with James; are statements of fact, rather than conclusions, in that the court is left free to make the ultimate conclusion from the affidavit of whether Waco-Porter was "doing business" in California.

We should like to make it clear that we consider the James affidavit meager in the extreme. Yet we believe the allegations sufficiently state facts from which the trial court justifiably concluded that Waco-Porter had established "minimal contacts" in California and was "doing business" within the rationale of *International Shoe Co.* v. *State of Washington, supra, McGee* v. *International Life Insurance Co., supra, Cosper* v. *Smith & Wesson Arms Co., supra,* and *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855 [323 P.2d 437].

Nor are the statements in the James affidavit objectionable as *extrajudicial statements* (*Smith & Wesson, Inc.* v. *Municipal Court,* 136 Cal.App.2d 673, 679 [289 P.2d 26]) since they are

declarations made under oath by one claiming to be an agent. It was held in *Kast* v. *Miller & Lux,* 159 Cal. 723 [115 P. 932], at page 727, that "The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself. His testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby. This is the general, and it may be said, the universal rule."

The important fact remains that the statements in the affidavit do not attempt to strip the court of its judicial function of determining from the allegations whether Waco-Porter was "doing business" in California within the rationale of the authorities cited above. It should be pointed out, also, that on an appeal from an issue tried by affidavits, those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also facts which reasonably may be inferred therefrom. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].) These inferences may be drawn from any single affidavit, or from all of the affidavits construed together.

We believe the allegations of the James affidavit are sufficient to support the finding of the trial court that Waco-Porter was "doing business in the State of California" in the sense that this term is used in Code of Civil Procedure section 411, subdivision 2.

The petition for writ of mandate is denied.

Conley, P. J., and Brown, J., concurred.