[Civ. No. 22970. First Dist., Div. Two. Feb. 27, 1967.]

DOMINGOS P. DaSILVEIRA et al., Plaintiffs and Appellants, v. WESTPHALIA SEPARATOR CO., Defendant and Respondent.

Machado, Feeley & Machado, Peter E. Tiernan and Frank P. Nicoletti for Plaintiffs and Appellants.

Morrison, Foerster, Holloway, Clinton & Clarke, Richard J. Archer and Douglas C. White for Defendant and Respondent.

TAYLOR, J.—On this appeal from an order quashing the service of summons made on the Westphalia Separator Company, a German corporation (hereafter Westphalia), the only question is whether Westphalia was amenable to service of process and the jurisdiction of the California courts. Plaintiffs filed an action for negligence and breach of warranty in the wrongful death of their adult son, who was killed in the explosion of a cream separator manufactured by Westphalia and sold in California by its exclusive United States distributor, Centrico, Inc., a New York corporation (hereafter Centrico). Westphalia was served by making service on the Secretary of State of this state (Corp. Code, § 6501) and has appeared specially to quash the service (Code Civ. Proc., § 416.1).

Code of Civil Procedure section 411, subdivision 2, provides for service of summons on a foreign corporation doing business in this state in the manner set forth in sections 6500 to 6504 of the Corporations Code. The basic question is whether Westphalia was "doing business in this state" within the sense of section 411 of the Code of Civil Procedure which is equated with the due process clause of the United States Constitution (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 82 [346 P.2d 409]).

The principles governing the determination are found in *International Shoe Co.* v. *Washington,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], which broadened the scope

of the prior landmark case on the subject, *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed 565]. *International Shoe* held that "doing business" insofar as that term relates to jurisdiction, requires "certain minimum contacts" with the state of the forum in order that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' '" This terminology encompasses a field so broad as to preclude precise definition. Thus, the term "doing business" is a product of judicial construction and the determination depends upon the circumstances of each individual case (*Empire Steel Corp. of Texas, Inc.* v. *Superior Court*, 56 Cal.2d 823, 831 [17 Cal.Rptr. 150, 366 P.2d 502]). The minimal character of the business contact now required to give a state jurisdiction over a nonresident person or corporation is well illustrated in *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]. There, the delivery of a certificate of insurance and the collection of premiums by interstate mail were declared sufficient to justify constructive service in a local action on an insurance policy against the out-of-state corporation.

 But here, we do not have a single California contact by Westphalia. The affidavit of its president, Werner Habig, indicates that Westphalia is a corporation organized and existing by virtue and under the laws of Germany; that it has never engaged in business anywhere in the United States; that its dealings in the United States are limited to transactions with Centrico, its United States distributor and only United States customer. Centrico is a New York corporation with principal offices at Englewood, New Jersey; that Westphalia and Centrico are independent corporations and neither has any interest in the other; that there is no distribution agreement between Westphalia and Centrico, which is free to act as distributor of or otherwise handle products other than those produced by Westphalia; that Westphalia exercises no control over the price at which its products are resold by Centrico and does not provide replacement parts or servicing for its products nor make adjustments; all of Westphalia's sales in the United States are to Centrico and all sales and the deliveries pursuant thereto take place outside California. The sales to Centrico are for cash, made pursuant to orders placed by Centrico's New Jersey office and accepted by Westphalia in Germany; all shipments are made to Centrico in New Jersey with title passing to Centrico at the moment goods are removed from a bonded warehouse maintained under the supervision of

the United States Collector of Customs in New York City, New York. Westphalia makes no shipments to Centrico's customers in California or elsewhere. Westphalia has never solicited business in California by mail or other means nor had agents or employees or salesmen on a commission or any other basis in California. Westphalia never advertised in any newspaper, magazine, trade journal or other periodical published or circulated in California nor has it ever advertised on any radio or television station in California or in any of the United States.

Westphalia has never made any contracts with persons in California nor has it made any contracts to be performed in California; it has never qualified to do business in California, has never paid taxes in California, and has never appointed an agent for service of process or owned or maintained an office, warehouse or stock of merchandise or ever had a bank account or other real or personal property in California.

■ Whether or not the required minimum contacts were shown in this case must be determined from the prevailing party's affidavit, and the uncontroverted statements in the countervailing affidavits (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349]). The only uncontroverted matters set forth in the counteraffidavits are that Centrico has for some time listed the Westphalia separator in the San Francisco telephone directory under its distributors, and that following the accident, the separator was sent to Germany and accepted and retained by Westphalia.

We have in mind the doctrine of *Waco-Porter Corp.* v. *Superior Court,* 211 Cal.App.2d 559 [27 Cal.Rptr. 371], relied upon by plaintiffs. However, in that case, there was some "minimum contact" with this state. The distributor was a California corporation and although the sale, as in the instant case, was consummated outside the state, the equipment was shipped directly to California by the manufacturer. Furthermore, in Waco, the fact that the manufacturer's president came to California to investigate the accident might indicate some assumption of responsibility for the resale of the faulty product.

In *Bibie* v. *T.D. Publishing Corp.,* 252 F.Supp. 185, where California was found to have jurisdiction, the distributor was an independent out-of-state corporation and had purchased the magazines involved outright from the defendant publisher in New York. However, the shipment to the wholesalers throughout the United States was made directly from the pub-

lisher's printing plants, subscription copies were placed in the mail at the printing plants for direct delivery to the customers and it was known that 10 percent of the national subscriptions to the magazine in question were in California. The publisher earned substantial profits from the readers in California and was fully aware that the California market was being exploited for the sale of its product. Under these circumstances, the court held that the "minimum contact" had been established.

In the instant case, there was no act by which Westphalia purposely availed itself of the privilege of conducting business in California (*Hanson* v. *Denckla,* 357 U.S. 235, 253 [2 L.Ed.2d 1283, 78 S.Ct. 1228]). The listing of the cream separator in Westphalia's name in the San Francisco telephone directory by a completely independent nonexclusive distributor who had acquired unlimited title, cannot be considered a sufficient contact with the state to justify the assumption of jurisdiction to enforce a cause of action against a foreign corporation (*Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1]). We must accept the allegation in Westphalia's affidavit that it had no agents or employees in California and thus infer that the cream separator was shipped from California to Germany by Centrico or at least by someone other than Westphalia. Furthermore. there is nothing in the record disclosing the circumstances under which the separator was accepted and retained by Westphalia. The bare fact that it was returned to Westphalia's possession would neither imply an acknowledgement of responsibility by that company nor could it constitute the required "minimum contact."

We recognize the interest of this state in the regulation of business and providing a convenient forum for the trial of cases brought by its own residents (*Fisher Governor Co.* v. *Superior Court, supra*). But this cannot legally justify its assumption of jurisdiction over a foreign corporation which had made an outright sale of goods in another state to a totally independent non-exclusive distributor which, in turn, had then shipped the product without title limitation for resale to the purchaser in California (*Twinco Sales, Inc.* v. *Superior Court.* 230 Cal.App.2d 321 [40 Cal.Rptr. 833] ; *Yeck Mfg. Corp.* v. *Superior Court,* 202 Cal.App.2d 645 [21 Cal.Rptr. 51]).[1]

---

[1]We note that plaintiffs are not deprived of any cause of action as under California law, the distributor is as accountable on theories of strict liability and breach of warranty as the manufacturer for a faulty

"Traditional notions of fair play and substantial justice" would clearly be offended by forcing Westphalia into a California action under the circumstances indicated by the record. ██ We conclude that plaintiffs have not met the burden of proof necessary to show that Westphalia was doing business in California within the meaning of Code of Civil Procedure section 411, subdivision 2 (*Briggs* v. *Superior Court,* 81 Cal. App.2d 240 [183 P.2d 758]).

The order quashing service of summons is affirmed.

Agee, Acting P. J., and Bray, J.,* concurred.

instrumentality likely to be dangerous when put to its intended use (*Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639 [55 Cal.Rptr. 94]).

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.